**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4338**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAMAR BURNS-JOHNSON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:15-cr-00195-FDW-DCK-1)

Argued: December 7, 2016                    Decided: July 18, 2017

Before KING, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge King and Judge Duncan joined.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Ross Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the North Carolina offense of robbery with a dangerous weapon, in violation of North Carolina General Statutes Section 14-87 (armed robbery, or statutory armed robbery), qualifies as a "violent felony" for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Relying on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*), in which the Supreme Court invalidated the ACCA's residual clause as being unconstitutionally vague, Lamar Burns-Johnson argues that his predicate North Carolina convictions for armed robbery no longer qualify as "violent felonies" because they are not enumerated crimes under the ACCA's definition of that term and do not meet the requirements of the definition's "force clause." *See* 18 U.S.C. § 924(e)(2)(B). Burns-Johnson therefore asserts that the district court erred in considering those convictions in imposing sentence on him.

Upon our review, we conclude that the offense of armed robbery under North Carolina General Statutes Section 14-87 categorically qualifies as a violent felony under the "force clause" of the ACCA. Accordingly, we affirm the district court's judgment sentencing Burns-Johnson as an armed career criminal.

I.

In 2015, Burns-Johnson pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In the presentence report, the probation officer recommended that Burns-Johnson be sentenced as an armed career criminal based

on his prior armed robbery convictions.  Burns-Johnson objected to the ACCA designation, arguing that armed robbery under North Carolina General Statutes Section 14-87 does not qualify as a violent felony under the ACCA.  The district court overruled Burns-Johnson's objection and held that his prior convictions for statutory armed robbery under North Carolina law qualify as violent felonies under the force clause of the ACCA, because that offense requires the use, attempted use, or threatened use of force.

As a result of Burns-Johnson's ACCA classification, he was subject to a mandatory minimum sentence of 15 years' imprisonment, with a Sentencing Guidelines range of between 180 and 210 months' imprisonment.  *See* 18 U.S.C. § 924(e)(1).  In May 2016, the district court sentenced Burns-Johnson to the mandatory minimum term of 180 months in prison.  Burns-Johnson now appeals.

## II.

The sole issue before us is whether the offense of robbery with a dangerous weapon, in violation of North Carolina General Statutes Section 14-87, qualifies as a violent felony within the meaning of the ACCA, 18 U.S.C. § 924(e).  This question presents an issue of law, which we review de novo.  *See United States v. Gardner*, 823 F.3d 793, 801 (4th Cir. 2016).

### A.

We begin our analysis with an overview of the ACCA.  Under this statutory scheme, a defendant qualifies as an armed career criminal, and is subject to a mandatory minimum 15-year term of imprisonment, if he has three prior convictions for "a violent

3

felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A crime qualifies as a "violent felony" if the offense is "punishable by imprisonment for a term exceeding one year" and

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the force clause]; or

> (ii) is burglary, arson, or extortion, involves use of explosives [the enumerated offense clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause].

*Id.* § 924(e)(2)(B). In *Johnson II*, decided before Burns-Johnson's sentencing hearing, the Supreme Court struck down the residual clause as unconstitutionally vague. 135 S. Ct. at 2557-60. Therefore, because robbery is not listed in the enumerated offense clause, statutory armed robbery under North Carolina law may qualify as a violent felony only by satisfying the requirements of the ACCA's force clause.

To determine whether a state crime qualifies as a violent felony under the ACCA's force clause, we apply the categorical approach described by the Supreme Court in *Descamps v. United States*, 133 S. Ct. 2276 (2013).[1] *See Gardner*, 823 F.3d at 802. Under the categorical approach, we examine whether a state crime has as an element the "use, attempted use, or threatened use of physical force against the person of another," and do not consider the particular facts underlying the defendant's conviction. *Descamps*, 133 S. Ct. at 2283 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990));

---

[1] The categorical approach applies to "indivisible statutes" that do not include alternative elements establishing "multiple, alternative versions of the crime." *Descamps*, 133 S. Ct. at 2284-85, 2289-90. We agree with the parties that North Carolina General Statutes Section 14-87 is an indivisible statute to which the categorical approach applies.

4

*Gardner*, 823 F.3d at 803 (citing 18 U.S.C. § 924(e)(2)(B)(i)). The Supreme Court has defined the term "physical force" as used in the ACCA as "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*). Accordingly, if the elements of a crime can be satisfied by de minimis physical contact, the offense does not qualify categorically as a violent felony. *See id.* at 140-42.

In evaluating whether a state offense requires the use, attempted use, or threatened use of physical force, federal courts must rely on the interpretation of the offense rendered by the courts of the state in question. *See United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017); *United States v. Doctor*, 842 F.3d 306, 309 (4th Cir. 2016). We look to the "minimum conduct" required to obtain a conviction for the state crime, and ensure that there is "a realistic probability, not a theoretical possibility, that a state would actually punish that conduct."[2]  *Doctor*, 842 F.3d at 308 (internal quotation marks omitted) (quoting *Gardner*, 823 F.3d at 803); *see also Moncrieffe v. Holder*, 133 S. Ct.

---

[2] We disagree with Burns-Johnson's contention that the "realistic probability" test does not apply when we compare a state statutory crime to the ACCA force clause. Although, before the Supreme Court's decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), we limited the realistic probability test to generic crimes*, see United States v. Torres-Miguel*, 701 F.3d 165, 170-71 (4th Cir. 2012), in the years since *Moncrieffe* was decided, we also have used the test to determine whether state common law crimes qualify under the force clause. *See Doctor*, 842 F.3d at 308; *Gardner*, 823 F.3d at 803. In the context of both common law and statutory crimes arising under state law, we consider whether there is a "realistic probability . . . that a state would actually punish [certain] conduct" to evaluate how states interpret the elements of their own offenses. *See Doctor*, 842 F.3d at 308 (internal quotation marks omitted) (quoting *Gardner*, 823 F.3d at 803).

1678, 1685 (2013). With this background in mind, we turn to consider the offense of statutory armed robbery under North Carolina law.

B.

Burns-Johnson advances two alternative arguments in support of his contention that statutory armed robbery does not constitute a violent felony. He contends that (1) the offense does not include as an element the use of violent physical force as defined by the Supreme Court; and (2) the offense does not require the intentional use or threatened use of force and, therefore, does not meet the mens rea requirement of the ACCA. We address each argument in turn.

i.

Burns-Johnson first argues that statutory armed robbery does not categorically qualify as a violent felony because the crime does not require the use of violent physical force "capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. He contends that North Carolina courts have defined the term "dangerous weapon" broadly to include means that do not involve the use or threatened use of violent force, such as the use of substances like poison. Relying on this Court's decision in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), Burns-Johnson asserts that because the crime can be accomplished by administering poison, which he contends does not involve the use of violent physical force, statutory armed robbery does not qualify categorically as a violent felony. We disagree with Burns-Johnson's argument.

North Carolina General Statutes Section 14-87 provides that

> [a]ny person or persons who, *having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened*, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony (emphasis added).

North Carolina courts have interpreted Section 14-87 as encompassing four elements: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened" and (4) "the defendant had the intent to deprive the owner of his property at the time of taking." *State v. Kemmerlin*, 573 S.E.2d 870, 889 (N.C. 2002) (citations omitted). As of the date of Burns-Johnson's offense, North Carolina courts defined the term "dangerous weapon" to include "any article, instrument or *substance* which is likely to produce death or great bodily harm." *State v. Wiggins*, 337 S.E.2d 198, 199 (N.C. Ct. App. 1985) (emphasis added) (citation omitted); *see, e.g.*, *State v. Cockerham*, 497 S.E.2d 831, 832-34 (N.C. Ct. App. 1998) (upholding conviction for attempted robbery with a dangerous weapon in which the defendant threw gasoline into the face of a victim, when matches were located nearby, in an attempt to rob the victim of property in his store).

Assuming, without deciding, that statutory armed robbery realistically might encompass robbery by poison, this Court's decision in *Torres-Miguel* is not dispositive of the question whether armed robbery constitutes a violent felony. In *Torres-Miguel*, we addressed whether a California offense requiring that a defendant "threaten[] to commit a

7

crime which will result in death or great bodily injury to another" constituted a "crime of violence" under the illegal reentry Guideline, U.S.S.G. § 2L1.2. 701 F.3d at 166-67. In concluding that this California crime did not qualify as a crime of violence, we explained that "a crime may result in death or serious injury without involving use of physical force," such as, for example, by use of poison. *Id*. at 168 (emphasis omitted).

After our decision in *Torres-Miguel*, however, the Supreme Court issued its opinion in *United States v. Castleman*, 134 S. Ct. 1405 (2014), which addressed the degree of force necessary to support a conviction for a misdemeanor crime of domestic violence, as used in 18 U.S.C. § 922(g)(9). The Supreme Court explained that when a defendant uses poison against another person, the relevant "use of force" "is not the act of 'sprinkling' the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Castleman*, 134 S. Ct. at 1415 (internal quotation marks and brackets omitted). As we held in *In re Irby*, 858 F.3d 231, 235-38 (4th Cir. 2017), this language in *Castleman* abrogates our statement in *Torres-Miguel* that the use of poison would not constitute the use of force under *Johnson I*, 559 U.S. at 140. *See also United States v. Reid*, --- F.3d ----, 2017 WL 2782624, at *5 (4th Cir. June 28, 2017) (explaining that after *Castleman*, the phrase "use of physical force" includes "*indirect* applications" of such force). For these reasons, even if North Carolina statutory armed robbery could be committed by use of poison, the crime necessarily still would entail the use, attempted use, or threatened use of violent physical force under the ACCA.

8

Burns-Johnson next argues that North Carolina statutory armed robbery does not constitute a violent felony because the offense does not explicitly require that a person *intentionally* use or threaten to use force. Burns-Johnson relies on the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), in which the Court held that the phrase "use of physical force" requires "active employment" of such force, and does not reach "negligent or merely accidental conduct" for purposes of the definition of "crime of violence" in 18 U.S.C. § 16. *See also Garcia v. Gonzales*, 455 F.3d 465, 469 (4th Cir. 2006) (relying on *Leocal*, and holding that "recklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence'" under 18 U.S.C. § 16(b)).

As noted above, a conviction under Section 14-87 requires proof of four elements: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened" and (4) "the defendant had the intent to deprive the owner of his property at the time of taking." *Kemmerlin*, 573 S.E.2d at 889 (citations omitted). In Burns-Johnson's view, because the only mens rea requirement specified in Section 14-87 is the intent to deprive the victim of her property, and there is no statutory language articulating a mens rea requirement regarding the use of a dangerous weapon, the offense does not satisfy the definition of "use" set forth in *Leocal*. We disagree.

Burns-Johnson's argument is foreclosed by our recent decision in *United States v. Doctor*, 842 F.3d 306. In that case, we rejected an identical argument raised by the

defendant, namely, that common law robbery in South Carolina did not qualify as a violent felony under the ACCA because the offense did not include a specific requirement that intentional force be used. *Id*. at 311. In holding that common law robbery in South Carolina included the use of force as an element, we explained that robbery is a general intent crime that requires knowledge only of the actus reus of the offense. *Id*. Accordingly, we held that "the intentional taking of property, by means of violence or intimidation sufficient to overcome a person's resistance, must entail more than accidental, negligent, or reckless conduct." *Id*.

Burns-Johnson has not produced any North Carolina case in which a defendant was convicted of statutory armed robbery through the reckless, negligent, or accidental use of a dangerous weapon.[3] Nor does Burns-Johnson offer a plausible explanation for how a defendant might intentionally steal a victim's property through such unintentional use, or unintentional threatened use, of a weapon.

Instead, Burns-Johnson points only to the Ninth Circuit's decision in *United States v. Dixon*, 805 F.3d 1193, 1197-98 (9th Cir. 2015), in which the court held that California statutory robbery did not qualify as a violent felony under the ACCA, because the offense

---

[3] The Supreme Court recently held that the "use" of force required to constitute a "misdemeanor crime of domestic violence" under 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9), includes all volitional conduct. *Voisine v. United States*, 136 S. Ct. 2272, 2278-79 (2016). The Court clarified that *Leocal* stands for the proposition that "merely accidental conduct" does not amount to "use" of force. *Id*. at 2279 (internal quotation marks omitted) (citing *Leocal*, 543 U.S. at 9). Nevertheless, the Court declined to decide whether the different statute at issue in *Leocal* would include reckless conduct within its definition of "use" of force. *Id*. at 2280 n.4.

could be committed through the accidental use of force.  In *Doctor*, however, we declined to follow the Ninth Circuit's approach, because that court was presented with a "stranger-than-fiction" California case in which a defendant stole a car out of a parking garage and accidentally struck the car's owner while fleeing.[4]  *Doctor*, 842 F.3d at 311 n.5.  We similarly conclude that the reasoning in *Dixon* is distinguishable from the present case.

The unintentional use of a dangerous weapon during a robbery would require the exercise of pure "legal imagination."  *Moncrieffe*, 133 S. Ct. at 1685.  Therefore, we conclude that there is not a realistic probability that North Carolina's appellate courts would apply Section 14-87 as encompassing robbery with the unintentional use of a dangerous weapon.  *See id.*

III.

For these reasons, we hold that robbery with a dangerous weapon under North Carolina General Statutes Section 14-87 categorically qualifies as a violent felony under the ACCA, and that, therefore, the district court did not err in sentencing Burns-Johnson as an armed career criminal.  Accordingly, we affirm the district court's judgment.

*AFFIRMED*

---

[4] Burns-Johnson also relies on *Dixon* in combination with the North Carolina Court of Appeals' decision in *State v. Hill*, 641 S.E.2d 380 (N.C. Ct. App. 2007), holding that a motor vehicle can constitute a dangerous weapon under Section 14-87.  Based on these decisions, Burns-Johnson argues that the accidental use of a car in the course of a robbery plausibly might support a conviction under Section 14-87.  We disagree with this construction of *Hill*.  The defendant in *Hill* conceded that her co-defendant intentionally sought to strike the victim with a car in an attempt to escape the scene of the robbery. *Hill*, 641 S.E.2d at 385.  Thus, the question whether unintentional use of a weapon could support an armed robbery conviction was not before the North Carolina court.